1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN G. ANDRADE,<br><br>                          Petitioner,<br><br>v.<br><br>RAYBON JOHNSON, Warden,<br><br>                          Respondent. | Case No.: 3:20-cv-01147-MMA-RBM<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE RE: RESPONDENT'S MOTION TO DISMISS**<br><br>**[Docs. 1, 7]** |

## I.     INTRODUCTION

On June 16, 2020, Petitioner Martin G. Andrade ("Petitioner"), a state prisoner proceeding pro se, constructively filed a Petition for Writ of Habeas Corpus ("Petition") under 28 U.S.C. § 2254. (Doc. 1.)  According to the Petition, Petitioner was convicted of first-degree murder with an admitted gang allegation and prior strike conviction and was sentenced in 2016 in the Imperial County Superior Court.  (Doc. 1 at 1-2 (citing Imperial Cnty. Super. Ct. Case No. JCF030233); *see* Doc. 7-1 at 5.)  Petitioner challenges his conviction on three grounds: (1) the trial court violated Petitioner's federal rights to an impartial and unanimous jury; (2) the prosecution's inclusion of excluded enhancements violated the plea agreement and irreparably damaged Petitioner's right to a fair trial; and

1

1 | (3) the trial court committed reversible error in permitting the prosecution to introduce
2 | irrelevant evidence. (*See* Doc. 1 at 6-8, 53-98; *see also* Doc. 7-1 at 5.)

3 | Before the Court are the underlying Petition and Respondent Raybon Johnson's
4 | ("Respondent") Motion to Dismiss the Petition ("Motion to Dismiss"). (Docs. 1, 7.)
5 | Petitioner did not file an opposition to the Motion to Dismiss, however, the Petition and an
6 | accompanying Motion to File Late Habeas Petition addresses the issues raised in
7 | Respondent's Motion to Dismiss. After a thorough review of the papers on file, the facts,
8 | and the applicable law, the undersigned respectfully recommends that Respondent's
9 | Motion to Dismiss be **DENIED** and a new briefing schedule on the merits of the Petition
10 | be issued.

## II.   BACKGROUND & PROCEDURAL HISTORY

### A.   Underlying Offense

13 | In 2013, Martin Garza, his sister, and five friends went to a party in El Centro. (Doc.
14 | 1 at 22-23.) The group arrived at the party and were confronted by Petitioner and a group
15 | of people. (*Id.* at 23.) Petitioner asked Garza and his group where they were from, what
16 | they "claimed," and repeated the phrase "North Side Centro." (*Id.*) Garza denied any gang
17 | affiliation. (*Id.*) An individual in Petitioner's group intervened and stopped the altercation.
18 | (*See id.* at 24.) Later, Petitioner resumed references to "North Side Centro." (*Id.* at 24.)
19 | Tensions escalated, a fight broke out, and Garza was stabbed. (*Id.*) Garza eventually died
20 | from the injuries. (*Id.* at 26.) After an investigation, Petitioner was arrested. (*Id.* at 37.)

### B.   Conviction

22 | In 2016, a jury found Petitioner guilty of first-degree murder (Cal. Penal Code §
23 | 187(a)(1)). (Doc. 1 at 1-2; Doc. 7-1 at 5.) In a separate proceeding, Petitioner admitted to
24 | a gang allegation (Cal. Penal Code § 186.22(b)). (Doc. 1 at 21; Doc. 7-1 at 5.) In a
25 | bifurcated proceeding, the Court found that Petitioner had a prior strike conviction (Cal.
26 | Penal Code § 667(b)-(1)). (Doc. 7-1 at 5; *see* Doc. 1 at 2, 21.) The Court sentenced
27 | Petitioner to fifty years to life in prison. (Doc. 1 at 1; Doc. 7-1 at 5.)
28 | ///

2

## C.    Direct Appeal

Petitioner appealed his conviction to the California Court of Appeal.  (Doc. 1 at 2.) In 2018, the Court of Appeal affirmed the conviction.  (*Id.* (citing Cal. Ct. App. Case No. D070707).)  Petitioner then appealed his conviction to the California Supreme Court.  (*See id.*)  On October 10, 2018, the California Supreme Court summarily denied review.  (Doc. 1 at 2 (citing Cal. Super. Ct. Case No. S250497); Doc. 7-1 at 5.)  Petitioner did not file a petition for certiorari in the United States Supreme Court.  (Doc. 1 at 3.)

## D.    "Out-to-Court" Status and Federal Habeas Corpus Petition

On July 23, 2019, Petitioner went "out-to-court"[1] and inventoried his personal property—including his legal materials—with the California Department of Corrections and Rehabilitation ("CDCR").  (Doc. 1 at 14-16; Doc. 2 at 2-3; Doc. 7-1 at 8-9.)  His property was not immediately returned to him, and it is unclear when exactly Petitioner was no longer on out-to-court status or which facility he returned to.  (*See* Doc. 1 at 14-15; *see also* Doc. 7-1 at 8.)  Petitioner was then transferred from Pelican Bay State Prison ("PBSP") to California State Prison Los Angeles County ("CSP-LAC").[2]  (*See* Doc. 2 at 2.)  On August 7, 2019, Petitioner submitted an "Inmate/Parolee Request for Interview, Item or Service" requesting to have his property/legal materials returned to him at CSP-LAC.  (Doc. 1 at 15; Doc. 2 at 2; Doc. 7-1 at 8.)  Petitioner alerted CDCR of his approaching court dates, requested they call the correctional officer with whom he inventoried his property, and requested they send his property to him.  (Doc. 1 at 15; Doc. 7-1 at 8.)  On August 17, 2019, a property officer responded to Petitioner's request and informed Petitioner that "they want [to] send your property to [CSP-]LAC[.]  I will try to check with [correctional officer] Miller regarding your legal work . . ."  (Doc. 1 at 15.)  Petitioner also included an undated response forwarded by a CDCR official stating that his property would

---

[1] "Out-to-court means an inmate is temporarily removed from a facility to be brought before a court to be tried for an offense, to be examined by a grand jury or magistrate, or for any other court proceedings." Cal. Code Regs. tit. 15, § 3000 (2021).
[2] The exact date that Petitioner was transferred from PBSP to CSP-LAC is unclear from a review of the filings.  (Doc. 2 at 2; *see* Doc. 1 at 15; *see also* Doc. 7-1 at 8-9.)

remain at PBSP per department policy. (Doc. 1 at 16; Doc. 2 at 2.) Petitioner also vaguely references an appeal while housed at CSP-LAC requesting to retrieve his property which did not receive a response, but it is unclear when such an appeal was submitted. (Doc. 2 at 2.) On June 8, 2020, Petitioner's property—including his legal materials—was returned to him while housed at CSP-LAC as evidenced by a form entitled "Inmate Property Inventory." (Doc. 1 at 14; Doc. 2 at 2; Doc. 7-1 at 8-9.)

On June 16, 2020 (i.e., 160 days after the one-year statute of limitations period elapsed), Petitioner filed the instant Petition and an accompanying Motion to File Late Habeas Petition.[3] (Doc. 1 at 12-13; Doc. 2 at 1; Doc. 7-1 at 6.)

### III.   **LEGAL STANDARD**

A prisoner is entitled to federal habeas relief only if he is held in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a) (2018); *see Wilson v. Corcoran*, 562 U.S. 1, 1-2 (2010) (per curiam).

The Antiterrorism and Effective Death Penalty Act ("AEDPA") imposes a one-year statute of limitations to file a federal habeas petition after the state judgment becomes final. 28 U.S.C. § 2244(d); *see Smith v. Mahoney*, 611 F.3d 978, 993 (9th Cir. 2010). Petitions filed after the statute of limitations may be dismissed with prejudice. *See Jimenez v. Rice*, 276 F.3d 478, 482-83 (9th Cir. 2001).

AEDPA is "subject to equitable tolling in appropriate cases."[4] *Holland v. Florida*, 560 U.S. 631, 645 (2010). The AEDPA statute of limitations defense is not jurisdictional. *Id.* A non-jurisdictional federal statute of limitations, such as AEDPA's, is "subject to a 'rebuttable presumption' in *favor* 'of equitable tolling.'" *Id.* at 645-46 (quoting *Irwin v.*

---

[3] Given that the Court issued an Order Requiring Response to Petition ("Order") setting forth a briefing schedule on the Petition, on July 20, 2020, the undersigned issued a minute order denying the Motion to File Late Habeas Petition as moot and stated the case "will proceed as outlined in the Order." (Doc. 5.) However, the Motion to File Late Habeas Petition contains information directly relevant to the instant analysis, therefore, it will be considered.

[4] AEDPA provides another tolling provision which suspends the limitations period for the time during which a "properly filed" application for post-conviction or other collateral review is pending in state court. 28 U.S.C. § 2244(d)(2); *Pace v. DiGuglielmo*, 544 U.S. 408, 410 (2005). Because Petitioner did not seek collateral post-conviction relief in state court, such tolling does not apply here.

1   *Dept. of Veterans Affairs*, 498 U.S. 89, 95-96 (1990)) (emphasis in original).   Notably,

2   equitable principles traditionally govern the substantive law of habeas corpus.   *Id.* at 646.

3   ## IV.   DISCUSSION

4        Although Petitioner did not timely file the instant Petition within the one-year statute

5   of limitations period, Petitioner argues that he is entitled to equitable tolling.   (*See* Doc. 2

6   at 1 ("[b]ecause Petitioner immediately filed his petition . . . after receiving his property,

7   he should not be penalized with the 'tolling' procedure because it was not his fault.").)

8   Respondent counters that the Petition should be dismissed, because Petitioner failed to

9   meet the exceptional circumstances standard of equitable tolling.   (Doc. 7-1 at 6-7.)

10  Respondent argues that Petitioner's lack of access to his legal materials does not amount

11  to exceptional circumstances, because he knew the factual basis of his claim to file a basic

12  form habeas petition notwithstanding the lack of access. (*See id.* at 10.) Respondent argues

13  that Petitioner did not act diligently, because he did not file the Petition when he had his

14  legal materials and made only a single documented request for return of the materials.   (*Id.*

15  at 11-12.)

16       For the reasons discussed below, the Court finds that Petitioner did not file his

17  Petition within the one-year statute of limitations.   However, he is entitled to equitable

18  tolling, because he diligently pursued his rights and extraordinary circumstances out of his

19  control prevented him from timely filing his Petition. *See Pace*, 544 U.S. at 418; *see also*

20  *Espinoza-Matthews v. State of California*, 432 F.3d 1021, 1026 (9th Cir. 2005).

21  ### A.   Petition was Not Filed within the Statute of Limitations

22       Under AEDPA, the one-year statute of limitations to file a federal habeas petition

23  begins to run after the state judgment becomes final. 28 U.S.C. § 2244(d); *see Smith*, 611

24  F.3d at 993. AEDPA states in relevant part:

25       (1) A 1-year period of limitation shall apply to an application for a writ of
26       habeas corpus by a person in custody pursuant to the judgment of a State court.
         The limitation period shall run from the latest of—

27            (A) the date on which the judgment became final by the conclusion of
28            direct review or the expiration of the time for seeking such review[.]

28 U.S.C. § 2244(d)(1)(A).

"The period of direct review after which a conviction becomes final includes the [ninety] days during which the state prisoner can seek a writ of certiorari from the United States Supreme Court." *Zepeda v. Walker*, 581 F.3d 1013, 1016 (9th Cir. 2009). It is appropriate to dismiss a federal petition for a writ of habeas corpus with prejudice when it was not filed within AEDPA's one-year statute of limitations. *Jimenez*, 276 F.3d at 482-83. The statute of limitations is a threshold issue that courts may resolve before the merits of individual claims. *See White v. Klitzkie*, 281 F.3d 920, 921-22 (9th Cir. 2002).

Here, the parties agree that the Petition was filed after the one-year statute of limitations. (Doc. 7-1 at 6-7; *see* Doc. 2 at 1.) Petitioner had ninety days to seek review from the United States Supreme Court after the California Supreme Court denied his petition for review on October 10, 2018. (Doc. 7-1 at 6); *see Zepeda*, 581 F.3d at 1016. He did not seek review. (Doc. 1 at 3.) Thus, judgment became final on January 8, 2019, giving Petitioner until January 8, 2020 to file his petition in federal court, absent tolling. (Doc. 7-1 at 6); 28 U.S.C. § 2244(d); *see Smith*, 611 F.3d at 993. The Petition was filed on June 16, 2020—160 days after the one-year statute of limitations expired. (Doc. 1 at 12-13; Doc. 7-1 at 8-9); 28 U.S.C. § 2244(d); *see Smith*, 611 F.3d at 993.

## B.   Petitioner is Entitled to Equitable Tolling

Petitioner alleges circumstances beyond his control made it impossible for him to timely file the Petition. Specifically, Petitioner alleges CDCR officials kept his legal materials and did not return them until after the deadline had run. (*See generally* Doc. 2.) Therefore, Petitioner alleges he is entitled to equitable tolling. (*See id.* at 1.)

A habeas petitioner may be entitled to equitable tolling of AEDPA's one-year statute of limitations if he can establish two elements: "(1) that he has been pursuing his rights diligently; and (2) that some extraordinary circumstance stood in his way." *Pace*, 544 U.S. at 418. The diligence required of a petitioner is "reasonable," not the "maximum feasible . . . ." *Holland*, 560 U.S. at 653 (internal quotations omitted). But equitable tolling is only available "if extraordinary circumstances beyond a prisoner's control make it impossible

6

1   to file a petition on time." *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002).  A

2   petitioner seeking to equitably toll the statute of limitations bears the burden of showing

3   that it should apply to him. *Lawrence v. Florida*, 549 U.S. 327, 336 (2007). "Determining

4   whether equitable tolling is warranted is a fact-specific inquiry." *Spitsyn v. Moore*, 345

5   F.3d 796, 799 (9th Cir. 2003) (internal quotations omitted). "[T]he threshold necessary to

6   trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule."

7   *Miranda*, 292 F.3d at 1066 (alterations in original and internal quotations omitted).

8          The dates relevant to the equitable tolling analysis are as follows:

| Event | Date |
| --- | --- |
| California Supreme Court denied review | October 10, 2018 |
| Judgment became final; one-year statute of limitations began | January 8, 2019 (i.e., 90 days after the California Supreme Court denied review) |
| Petitioner went on out-to-court status and inventoried legal materials with CDCR | July 23, 2019 (i.e., 196 days after the statute of limitations began to accrue) |
| One-year statute of limitations elapsed | January 8, 2020 (i.e., 169 days after Petitioner went out-to-court and inventoried his legal materials with CDCR) |
| Petitioner's legal materials returned | June 8, 2020 (i.e., 152 after the statute of limitations elapsed) |
| Petitioner filed the Petition | June 16, 2020 (i.e., 8 days after Petitioner's legal materials were returned and 160 days after the statute of limitations period elapsed) |

23          1.     Petitioner Pursued His Rights Diligently

24          Although Petitioner only made a single documented request for his property, his

25   diligence appears reasonable under the circumstances. (Doc. 1 at 15; Doc. 7-1 at 8); *see*

26   *Holland*, 560 U.S. at 653 (2010); *see also Doe v. Busby*, 661 F.3d 1001, 1015 (9th Cir.

27   2011) ("[r]easonable diligence requires only 'the effort that a reasonable person might . . .

28   deliver under [their] particular circumstances.'").  On July 23, 2019, Petitioner complied

1   with CDCR policy and inventoried his property while out-to-court.  (Doc. 1 at 14-16.)

2   When his property was not immediately returned to him, Petitioner filed a request for the

3   return of his property on August 7, 2019. (*Id.* at 15.)  Therein, Petitioner emphasized that

4   his court and filing dates were soon approaching and a speedy return of his property was

5   necessary. (*See id.*)

6       When CDCR officials responded to Petitioner's request on August 17, 2019, it was

7   reasonable for Petitioner to cease requesting his documents for two reasons: (1) CDCR

8   officials were aware of his request; and (2) they alluded to sending Petitioner his legal

9   materials when they could. *See cf. Fue v. Biter*, 842 F.3d 650, 654 (9th Cir. 2016) (finding

10  fourteen-month wait not an unusually long time to wait for a court's decision, where it was

11  reasonable to believe the court would notify petitioner).   Petitioner made at least one

12  documented request for his legal documents. (Doc. 1 at 15.)  This is acceptable here, given

13  reasonable diligence "is not the arena of bright-lines and dates certain," nor does it require

14  the "maximum feasible diligence." *Busby*, 661 F.3d at 1015; *Holland*, 560 U.S. at 653.

15  Petitioner requested his materials be returned to him, his request was acknowledged, and

16  it was reasonable to believe his materials were on their way. (Doc. 1 at 15.)  Further,

17  Petitioner alleges that he filed an appeal[5] to gain access to his property, which bolsters his

18  claim. (Doc. 2 at 2.)

19      Petitioner had until January 8, 2020 to file his petition in court, but his legal papers

20  were not returned to him until June 8, 2020. (Doc. 1 at 3, 14; Doc. 7-1 at 6); *see Zepeda*,

21  581 F.3d at 1016.  From July 23, 2019, the date Petitioner inventoried his property, to June

22  8, 2020, the date his property was returned to him, Petitioner was without his property for

23  321 days or ten months and seventeen days. (Doc. 1 at 14.)  A ten-month wait for the

24  return of property is not an unusually long time given the circumstances, especially

25

26

27  [5] It is unclear whether Petitioner's reference to an "appeal" refers to an appeal in state court or an
    administrative appeal. (*See* Doc. 2 at 2.)  But from the context of the briefing, it appears Petitioner is

28  referring to an administrative appeal submitted to prison officials to have his property returned to him.
    (*See id.*)

considering Petitioner is a pro se prisoner with little recourse and was housed at a different prison. *See Espinoza-Matthews*, 432 F.3d at 1027-28; *see also Roy v. Lampert*, 465 F.3d 964, 970 (9th Cir. 2006) ("even though *pro se* status alone is not enough to warrant equitable tolling, it informs and colors the lens through which we view the filings, and whether these filings made sufficient allegations of diligence."); *Dickershaid v. Martel*, 648 F. App'x 618, 621 (9th Cir. 2016) (finding petitioner entitled to equitable tolling where he was improperly deprived of his legal materials for four months and sixteen days and diligently filed nine grievances for the return of his property); *cf. Knight v. Schofield*, 292 F.3d 709, 710-11 (11th Cir. 2002) (per curiam) (finding a sixteen-month wait to contact court reasonable when pro se petitioner was told he would be notified of a decision but was not). In fact, the Ninth Circuit has squarely addressed this issue.

In *Espinoza-Mathews*, the issue was whether a pro se petitioner who filed a late petition and was deprived of his legal materials for 325 days was entitled to equitable tolling. *See Espinoza-Matthews*, 432 F.3d at 1028. The Court held that petitioner was entitled to equitable tolling, where he made four requests for the return of his legal materials and the delayed return of his legal materials amounted to extraordinary circumstances preventing timely filing. *Id.* at 1027-28. Under AEDPA's statute of limitations, petitioner had until April 18, 2003 to timely file his petition. *Id.* at 1025. Petitioner was without his legal materials from April 14, 2002 until his release from administrative segregation ("Ad-Seg") on March 5, 2003—a total of 325 days out of the 365-day statute of limitations period. *Id.* at 1028. Two months after his legal materials were first taken from him, he inquired regarding their whereabouts. *Id.* at 1027. In his inquiry, he specifically requested that, once found, his property be returned so he could prepare his federal habeas petition. *Id.* Shortly thereafter, his property was found, but he was not then given his legal papers. *Id.* As a result, "he continued to pursue his administrative appeals." *Id.* Petitioner requested the return of his legal materials three more times, but prison officials denied each request. *See id.* In response to the requests, prison officials suggested that petitioner could not access his property until after he was released from Ad-Seg. *Id.* Once released from

9

1   Ad-Seg, petitioner's legal materials were returned with slightly over one month to prepare

2   and file his petition. *Id.* at 1027-28. Depending on application of the prisoner's mailbox

3   rule, the petition was either 24 days late or 115 days late when filed. *Id.* at 1026. The

4   Ninth Circuit held the denial of petitioner's legal materials was an extraordinary

5   circumstance, that petitioner exercised diligence in pursuit of his rights, and that petitioner

6   was entitled to equitable tolling of the entire 325-day period he was without his legal

7   materials. *Id.* at 1027-28.

8          As in *Espinoza-Matthews*, Petitioner in this case exercised reasonable diligence

9   during the 321 days he was without his legal materials. *See Espinoza-Matthews*, 432 F.3d

10  at 1028. Petitioner made a documented request for the return of his legal materials only

11  two weeks after they were taken in CDCR custody. (*See* Doc. 1 at 14-16; *see also* Doc. 2

12  at 2.) Additionally, Petitioner allegedly filed an appeal requesting the materials, although

13  it is undocumented. (*Id.*) Once he received his legal materials on June 8, 2020, Petitioner

14  immediately filed the Petition and a Motion to File Late Habeas Petition on June 16, 2020.

15  (Docs. 1, 2.) These filings, constructively filed eight days after receiving his legal

16  materials, further evidence that Petitioner diligently pursued his rights. *See Dickershaid*,

17  648 F. App'x at 620-21.

18         Respondent also argues that Petitioner's failure to "make some effort to pursue their

19  rights over the ten-month period" or 286 days *before* losing access to his legal documents

20  illustrates his lack of diligence. (*See* Doc. 7 at 9, 11-12.) This includes the ninety days to

21  seek review from the United States Supreme Court and the 196 days that accrued from the

22  start of the one-year statute-of-limitations period which preceded the date Petitioner went

23  out-to-court. (*Id.*) But Respondent's argument is unavailing and has been unequivocally

24  rejected by the Ninth Circuit. *Grant v. Swarthout*, 862 F.3d 914, 921 (9th Cir. 2017). As

25  stated in *Grant*, "[n]o opinion of th[e Ninth Circuit] or of the Supreme Court has ever

26  upheld the denial of equitable tolling to a prisoner on the ground that he had not used the

27  portion of the one-year statute of limitations period that preceded the event justifying

28  tolling in a reasonable manner." *Id.* "Nor [has the Ninth Circuit] even suggest[ed] in any

10

1   of [its] cases that failing to have worked on, or failing to work sufficiently diligently on,

2   habeas petitions during a portion of the pre-extraordinary circumstances period might

3   prevent the petitioner from receiving equitable relief." *Id.* And Respondent's use of the

4   ninety days to seek review *before* judgment was final and *before* the one-year statute of

5   limitations period began to accrue is inappropriate and contrary to the full 365 days

6   afforded to Petitioner by Congress. *See id.* at 919-921. *Grant* specifically noted the

7   Congressional intent behind equitable tolling as follows:

8       Congress has determined that state prisoners are entitled to one full year from the
        date on which their conviction becomes final before their federal petition for habeas
9       corpus must be filed, and the Supreme Court has rightly held that equitable tolling
10      is an available remedy to ensure that prisoners are afforded their full statutory
        entitlement. Equitable tolling may not be applied in a manner that would serve to
11      deprive prisoners of their right to use the entire statutory period in the way they deem
12      fit. . . . To use equitable principles to in effect shorten the already-short statutory
        period available to all prisoners by requiring them to anticipate extraordinary
13      circumstances and to perform the necessary legal work in a shorter period of time
14      than the statute requires would deprive them of the availability of the full statute-of-
        limitations period and would compel them to meet the additional judge-made
15      requirement of performing their legal research and writing on a schedule deemed
16      appropriate in hindsight by a judge.

17   *Id.* at 920.

18       Petitioner exercised diligence in requesting his legal materials, immediately filed the

19   Petition when his materials where returned, and is entitled to the full year afforded to him

20   by Congress. *See Espinoza-Matthews*, 432 F.3d at 1027-28; *see also Grant*, 862 F.3d at

21   919-21. Therefore, the undersigned finds Petitioner exercised reasonable diligence under

22   the circumstances. *See Espinoza-Matthews*, 432 F.3d at 1027-28.

23       2.   Extraordinary Circumstances Prevented Petitioner from Timely Filing the
             Petition
24

25       Here, extraordinary circumstances prevented Petitioner from timely filing the

26   Petition. Respondent is correct that Petitioner possessed his legal materials for nearly ten

27   months or 286 days from the date the California Supreme Court denied review to the date

28   Petitioner inventoried his property with CDCR. (Doc. 7-1 at 9-10.) But Petitioner was

11

1   actually without all of his legal materials for 321 days. (*See* Doc. 1 at 14; *see also* Doc. 7-
2   1 at 8-9.)  This is comprised of the 169 days Petitioner was without his legal materials
3   during the time the one-year statute of limitations period was accruing and the 152 days
4   after the deadline to file had passed when his files were returned. (*See* Doc. 1 at 14; *see*
5   *also* Doc. 7-1 at 8-9.)  As Respondent concedes, Petitioner followed standard prison policy
6   by inventorying his property while out-to-court and it was prison policy to have his
7   property returned when he returned from out-to-court status. (Doc. 7-1 at 10.)  It is
8   "unrealistic" to expect Petitioner to prepare and file a "meaningful" petition on his own
9   within the statutory period "without access to his legal file." *See Ramirez v. Yates*, 571
10  F.3d 993, 998 (9th Cir. 2009).

11      Respondent is correct that Petitioner did not point to a specific document necessary
12  to prepare the Petition. (*See* Doc. 7-1 at 10-11.)  But even in such a circumstance, the
13  Ninth Circuit has held that a "complete lack of access" to a legal file "may constitute an
14  extraordinary circumstance . . . ." *Ramirez*, 571 F.3d at 998; *Espinoza-Matthews*, 432 F.3d
15  at 1027-28; *see Lott v. Mueller*, 304 F.3d 918, 925-26 (9th Cir. 2002) (holding that an
16  evidentiary hearing was required to determine if denying petitioner access to legal files for
17  eighty-two days warranted equitable tolling).

18      Similar to *Espinoza-Matthews*, as outlined above, Petitioner did not have access to
19  his legal materials for 169 days of his one-year statute of limitations period and 152 days
20  after the deadline to file had passed. (*See* Doc. 1 at 14); *see Espinoza-Matthews*, 432 F.3d
21  at 1027-28; *see supra* Part IV.B.1. at pp. 9-10.  Beginning just two weeks after his property
22  was taken, Petitioner made at least one documented request for his property and a second
23  undocumented reference to an appeal requesting his property. (*See* Doc. 1 at 15; Doc. 2 at
24  2.)  Petitioner was told both that CDCR officials intended to send his property to his new
25  prison and, in a separate response, that his property would remain at PBSP. (Doc. 1 at 15-
26  16; Doc. 2 at 2.)  Petitioner *received* his property 152 days *after* the statute of limitations
27  period expired, but he filed the Petition eight days after the materials were returned to him.
28  (Doc. 1 at 14.)  As in *Espinoza-Matthews*, the denial of Petitioner's legal materials was an

1    extraordinary circumstance and Petitioner is entitled to equitable tolling of the entire 321-

2    day period he was without his legal materials. *See Espinoza-Matthews*, 432 F.3d at 1028.

3          In sum, Petitioner acted with reasonable diligence under the circumstances when he

4    made his request for his legal materials and immediately filed the Petition and Motion to

5    File Late Habeas Petition upon receipt of those materials. *See Holland*, 560 U.S. at 653;

6    *see also Dickershaid*, 648 F. App'x at 620-21. And Petitioner's complete deprivation of

7    his legal materials constitutes extraordinary circumstances out of his control preventing

8    timely filing. *Ramirez*, 571 F.3d at 998; *Espinoza-Matthews*, 432 F.3d at 1027-28. As

9    such, equitable tolling is appropriate.

10         Because Petitioner was denied access to his legal materials for 321 days, the Court

11   respectfully recommends that the statute of limitations be tolled for that entire period—

12   from July 23, 2019 to June 8, 2020. Applying equitable tolling, Petitioner had until on or

13   about April 26, 2021 to timely file his Petition. Given that the Petition was filed on June

14   16, 2020, the Petition is timely.

15                          V.    **CONCLUSION**

16         For the reasons given, the Court respectfully recommends Respondent's Motion to

17   Dismiss be **DENIED** and a new briefing schedule on the merits of the Petition be issued.

18         This Report and Recommendation is submitted to the United States District Judge

19   assigned to this case, under 28 U.S.C. § 636(b)(1), and Civil Local Rules 72.1(d) and HC.2

20   of the United States District Court for the Southern District of California. Any party may

21   file written objections with the Court and serve a copy on all parties on or before **March**

22   **18, 2021**.    The  document  should  be  captioned  "Objections  to  Report  and

23   Recommendation." Any reply to the Objections shall be served and filed on or before

24   **April 15, 2021**. The parties are advised that failure to file objections within the specific

25   time may waive the right to appeal the District Court's Order. *Martinez v. Ylst*, 951 F.2d

26   1153, 1157 (9th Cir. 1991).

27   / / /

28   / / /

13

20-cv-01147-MMA-RBM

1      **IT IS SO ORDERED**.

2  DATE: March _4_, 2021

3

4  HON. RUTH BERMUDEZ MONTENEGRO

   UNITED STATES MAGISTRATE JUDGE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

20-cv-01147-MMA-RBM